# United States District Court
## For The District of Columbia

| | |
|---|---|
| United States of America, | |
| v. | Case No. 12-cr-014-APM |
| Oscar Ortega-Hernandez, | |
| Defendant. | |

## Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255

Oscar Ortega-Ramirez, through his counsel, respectfully files this supplement to his pending 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence.  Mr. Ortega-Ramirez's conviction under 18 U.S.C. § 924(c) must be vacated, given the Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Davis*, 139 S. Ct. 2319 (2019).

## I.   Introduction

Nine years ago, when he was 21 years old, Mr. Ortega-Hernandez experienced a mental breakdown.  He believed he was the "modern-day Jesus Christ that [we] have been waiting for."[1] At his 21st birthday party, on October 20, 2011, his family noticed his increasingly strange behavior—instead of celebrating like most kids, he read a 45-minute speech to his friends and family that veered from "supporting marijuana legislation to detailing the threat of secret societies to expressing frustration with American foreign policy in oil-producing countries."[2]  By the end, his friends and family were left scratching their heads out of confusion and concern.

Shortly after, Mr. Ortega-Hernandez submitted an audition tape to Oprah Winfrey where he can be seen wearing a large crucifix and a shaggy beard, begging her to "please cast [him] on [her] show Oprah, [because] it is so crucial that the world hears God's word—for the fate of humanity, for the fate of mankind."  *See* Mariano Castillo and Greg Botelho, *In video, White House shooting suspect calls himself 'modern-day Jesus,'* CNN (Nov. 18, 2011).  He had a mission,

---

[1] Mariano Castillo and Greg Botelho, *In video, White House shooting suspect calls himself 'modern-day Jesus,'* CNN (Nov. 18, 2011), https://www.cnn.com/2011/11/18/us/white-house-shooting-profile/index.html?hpt=hp_c2.

[2] William Yardley, *White House Shooting Suspect's Path to Extremism*, NY Times (Nov. 20, 2011), https://www.nytimes.com/2011/11/21/us/oscar-ortega-white-house-shooting-suspect-struggled-with-mental-illness.html.

dictated by God, to save the world from the coming apocalypse.  *See id.*  And he asked Oprah for a platform to spread his gospel because "[t]here is still so much more that God needs me to express to the world."  *Id.*  He noted that "I am totally sober right now and will willingly pass a drug test for you."  *Id.*  Given all this, he felt he was "the perfect candidate to get cast on [her] show" because not only did he have "a solution to make a huge impact on this world with small changes to our daily lives," he also had "with [him] the answer to worldwide peace."  *Id.*  It was "not just a coincidence that [he] look[ed] like Jesus."  *Id.*

In November 2011, he hatched an alternative plan to gain a platform to spread his message.  This plan, however, would become the biggest and most regrettable mistake of his life: He drove from Great Falls, Idaho, to Washington, D.C., and fired several rifle rounds from his car window at the White House.  This was *not* an attempt to assassinate the President—President Obama and the First Lady were out of town at the time.  Rather, this was a misguided attempt to bring the world's attention to what he believed was the coming apocalypse.  After firing the rounds, he sped away in a panic, crashed his car, and abandoned the vehicle and weapon, leaving behind all his belongings and providing sufficient information for law enforcement to immediately identify him.  No one was injured, but bullets damaged the façade of the building.

Two and a half years later, on March 31, 2014, Mr. Ortega-Ramirez appeared for sentencing.  At this time, his mental health problems had largely resolved.  He expressed deep remorse for his actions and discussed how he too was "trying to figure out how [he] found [himself] in this predicament."  Sent'g Transcript, ECF No. 104 at 68.  As he said, "the long-haired man that you saw in those videos and on the news two years ago does not reflect the man that I am today or the person I was in the past."  *Id.*  "What I did was a huge mistake and nobody

will ever have to worry about me doing anything against the law ever again.  I can't even believe that I am in this situation right now[.]"  *Id.*  The sentencing court recognized that "it was clear at the beginning that he was an individual person with mental health issues, which seemed to now have been – have subsided."  *Id.* at 71.

Nonetheless, the court sentenced Mr. Ortega-Ramirez to an aggregate term of 25 years in prison.  *See* Judgment, ECF No. 78.  He received 15 years for injuring a dwelling and placing lives in jeopardy, in violation of 18 U.S.C. § 1363.  *Id.*  And he received 10 years to be served consecutively for carrying a firearm during a "crime of violence," in violation of 18 U.S.C. § 924(c).  *Id.*  This was by far the most significant crime he had ever committed.  Up until that point, he had an arrest record comprised of mostly misdemeanors, like under-age drinking, that rarely involved violence.  *See* Presentence Investigations Report at 15-18.  The longest he'd served in jail before this incident was 90 days, when he was 15-years-old, for throwing a water balloon and cup of soda at another car while driving with his friends.  *Id.* at 15.[3]

The question for this Court today is whether Mr. Ortega-Hernandez's § 924(c) conviction is still valid in light of the Supreme Court's *Johnson* and *Davis* decisions.  Or put differently, does § 924(c) require him "to suffer additional punishment"—10 additional years— "on top of everything else?"  *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019).  When Mr.

---

[3] During his time in prison, Mr. Ortega-Hernandez has taken full advantage of the vocational and educational programs offered to him.  He has completed over 3,000 hours of apprenticeships and educational classes, ranging from psychology to microeconomics to welding.  *See* Ex. 1, certificates.  He is currently enrolled in an 8,000 hour apprenticeship program to become an electrician.  *Id.* at 1.  He successfully passed the EPA exam to become a certified H.V.A.C. Technician.  *Id.* at 5.  He successfully completed the Basic skills and Washer/Dryer portion of the National Appliance Service Technician Certification.  *Id.* at 6-8.  In his major appliance repair class, he was officially recognized for being one of the highest performing students.  *Id.* at 9.  And, he has enrolled in college to obtain his associates degree and currently has a 4.0 GPA.  *Id.* at 2-4.

Ortega-Hernandez was sentenced, § 924(c)(3) provided two definitions for a "crime of violence." A "crime of violence" was a felony offense that either:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another **[known as the "elements clause" or "force clause"]**, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense **[known as the "residual clause"]**.

The Supreme Court, however, has since held that the residual clause is unconstitutionally vague. *See United States v. Davis*, 139 S. Ct. 2319 (2019). Accordingly, the residual clause can no longer qualify Mr. Ortega-Ramirez's predicate offenses of injuring a dwelling as a "crime of violence."

Without that clause, Mr. Ortega-Ramirez is now innocent of his § 924(c) conviction. This means that Mr. Ortega-Ramirez's § 924(c) conviction and corresponding 10-year mandatory consecutive sentence are "imposed in violation of the Constitution or laws of the United States," 18 U.S.C. § 2255(a), and must be vacated, *id.* § 2255(b). Mr. Ortega-Ramirez respectfully requests that the Court grant his § 2255 motion, vacate his § 924(c) convictions, and begin scheduling this matter for resentencing.

## II. Relevant Factual and Procedural Background

Mr. Ortega-Hernandez was charged by the grand jury with a nineteen count indictment for offenses related to shooting at the White House on November 11, 2011. On September 18, 2013, Mr. Ortega-Ramirez pled guilty pursuant to a plea agreement to two counts: injury to a dwelling or placing lives in jeopardy within the special maritime and territorial jurisdiction of the United States in violation of 18 U.S.C. § 1363 (count 5), and using a firearm during a "crime of

violence" in violation of 18 U.S.C. § 924(c) (count 11). *See* Plea Agreement, ECF No. 53. The

"crime of violence" in count 11 was alleged to be the injuring a dwelling or placing lives in

jeopardy under § 1363 in count 5. *See* Superseding Indictment, ECF No. 17.

On March 31, 2014, the Court sentenced Mr. Ortega-Ramirez to 25 years (that is, 300

months) in prison—15 years (180 months) for count 5 and a mandatory consecutive 10 years (120

months) for count 11. *See* Min. Order (Mar. 31, 2014). Three days later, the Court filed its

written judgement that mistakenly imposed a supervised release condition requiring Mr. Ortega-

Hernandez to comply with the Sex Offender Registration and Notification Act ("SORNA"), 42

U.S.C. § 16904, *et seq.*, even though he had not been convicted of a sex offense.

On April 4, 2014, Mr. Ortega-Ramirez appealed both the length of his sentence and the

SORNA condition. The D.C. Circuit, on December 21, 2015, dismissed his appeal as to the

prison term but remanded for the Court to correct the SORNA error. *See* ECF No. 105. The

Court issued an amended judgment on December 23, 2015, which corrected the "clerical

mistake" and vacated the SORNA condition. *See* ECF No. 106. Mr. Ortega-Hernandez did not

appeal.

On June 26, 2015, the Supreme Court held in *Johnson v. United States*, 135 S. Ct. 2551

(2015) that the residual clause of the Armed Career Criminal Act (ACCA) (18 U.S.C.

§ 924(c)(2)(B)(ii)) was unconstitutionally vague. The *Johnson* decision was made retroactive on

collateral review by *Welch v. United States*, 136 S. Ct. 1257 (2016).

In light of those decisions, on June 21, 2016, Mr. Ortega-Ramirez filed an abridged motion

under § 2255 to vacate, set aside, or correct his sentence. *See* ECF No. 108. Additional briefing

on Mr. Ortega-Ramirez's abridged § 2255 motion was deferred under the Court's *Johnson*

Standing Orders, which anticipated that supplemental briefing would follow the Supreme Court's expected decisions.  *See Johnson* Standing Orders Nos. 1-7.

On June 25, 2019, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), which similarly held that the residual clause of 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague.  *Id.* at 2324.

Mr. Ortega-Ramirez now respectfully supplements his abridged § 2255 motion.

### III.  Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal prisoner may petition a district court to vacate, set aside, or correct his sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A petitioner's claim must be brought on one of these grounds to be considered "cognizable" on collateral review.  *See Davis v. United States*, 417 U.S. 333, 334–47 (1974) (discussing cognizability of claims for relief from federal criminal convictions under § 2255).

In addition, a one-year statute of limitations applies to § 2255 motions.  Section 2255(f) requires that a motion to be brought within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  § 2255(f)(3).  A district court may "hold[] in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court."  *Butterworth v. United States*, 775 F.3d 459, 464 (1st Cir. 2015) (quoting *Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001)).

Upon considering a properly filed § 2255 motion, a court must vacate a federal prisoner's sentence "[i]f the court finds," in relevant part, "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b). The court must then "set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

## IV. Argument

Mr. Ortega-Ramirez's conviction under 18 U.S.C. § 924(c) in count 11 should be vacated because it is unconstitutional under *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Davis*, 139 S. Ct. 2319 (2019). Mr. Ortega-Ramirez will first address the merits of his *Johnson* and *Davis* claim and then § 2255's procedural requirements.

### A. After *Johnson* and *Davis*, Mr. Ortega-Ramirez's § 924(c) predicate crime is no longer a "crime of violence."

Mr. Ortega-Ramirez's § 924(c) conviction for using a firearm in relation to a "crime of violence" is now void because, after *Johnson* and *Davis*, causing injury to a dwelling or placing lives in jeopardy under 18 U.S.C. § 1363 no longer qualifies as a "crime of violence." Section 924(c)(3) contains two definitions of a "crime of violence." The first definition, set out in the "elements clause," says that a crime of violence "means an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The second definition, set out in the "residual clause," was struck down in the recent *Davis* opinion, 139 S. Ct. 2319, and thus cannot apply. The only question, then, is whether Mr. Ortega-Ramirez's § 924(c) conviction can be sustained under the elements clause—*i.e.*, does the predicate offense of injury to a dwelling or

placing lives in jeopardy under § 1363 have as an element the use, attempted use, or threatened use of violent physical force?[4]

To answer this question, courts use the so-called "categorical approach." *See United States v. Kennedy*, 133 F.3d 53, 56 (D.C. Cir. 1998) ("A 'crime of violence' and a 'serious violent felony' are ordinarily designated as such by looking to the statutory definition of the crime, rather than the evidence presented to prove it."); *United States v. Davis*, 139 S. Ct. 2319, 2328 (2019) (explaining that § 924(c)(3)'s use of the words "elements" and "offense" mandate the categorical approach).

Under this approach, courts look to the minimum criminal conduct required for a conviction to determine if it *necessarily* involves violence. *See Montcrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). In doing so, courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [conviction] and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (emphasis in original) (internal quotation marks and citation omitted). In other words, "[i]f the law defines the crime in such a way that it can be committed using either violent or non-violent force, then the crime is not a ['crime of violence'], even if the defendant actually used violent force in committing the crime." *United States v. Haight*, 892 F.3d 1271, 1279 (D.C. Cir. 2018).

In this case, § 1363 creates two separate, interconnected crimes:

---

[4] In (*Curtis*) *Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court interpreted the phrase "physical force" to mean "*violent* force—that is, force capable of causing pain or injury to another person." *Id.* at 140 (emphasis in original). Subsequently, the Supreme Court clarified that the physical force element can be satisfied where the force is enough to "overcome a victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 548 (2019).

[*First*] [w]hoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously destroys or injures any structure, conveyance, or other real or personal property, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than five years, or both, and [*second*] if the building be a dwelling, or the life of any person be placed in jeopardy, shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1363.  Mr. Ortega-Ramirez pled guilty to the second crime, which has the following elements:

1. the defendant willfully and maliciously destroyed or injured any structure, conveyance, or other real or personal property, or attempted or conspired to do such an act;

2. the property was within the special maritime and territorial jurisdiction of the United States; and

3. the destroyed or injured building was a dwelling or the act resulted in the life of any person being placed in jeopardy.

*See United States v. Al-Imam*, 373 F. Supp. 3d 247, 267 (D.D.C. 2019) (describing the elements); *see also* Final Jury Instructions, *United States v. Al-Imam*, Case No. 17-cr-213, ECF No. 191 (D.D.C. June 4, 2019) (same); Final Jury Instructions, *United States v. Khatallah*, Case No. 14-cr-141, ECF No. 464 (D.D.C. Nov. 15, 2017) (same); *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, § 1363, at 292-93 (2019) (same).[5]   For the reasons discussed below, none of these elements require violent, physical force.

**1. § 1363 is not a crime of violence because it can be committed through a non-violent conspiracy.**

Section 1363 is not a crime of violence for a simple reason: it can be committed by *conspiring* to destroy property.  Conspiring to destroy property does not require an overt act, so a

---

[5] Available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf.

defendant can violate § 1363 by doing nothing beyond agreeing with others to destroy or injure property. *See, e.g.*, *United States v. Shabani*, 513 U.S. 10, 13-14 (1994) ("absent contrary indications, Congress intends to adopt the common law definition of statutory terms [and] the common law understanding of conspiracy does not make the doing of any act other than the act of conspiring a condition of liability"); *United States v. Pumphrey*, 831 F.2d 307, 309 (D.C. Cir. 1987) (finding conspiracy provision in 18 U.S.C. § 846 lacked overt-act requirement because it did not expressly contain one). The mere agreement to injure property does not necessarily involve the use, threatened use, or attempted use of force. For that reason alone, § 1363 is not a crime of violence.

The vast majority of the courts of appeals to consider the question, as well as the Solicitor General of the United States, have reached the same conclusion with respect to other conspiracy offenses—including where the underlying substantive offense does involve violent force. *See United States v. Reece*, 938 F.3d 630, 636 (5th Cir. 2019) ("Therefore, Reece's conviction for conspiracy to commit bank robbery cannot be a COV under 924(c)(3)'s elements clause"); *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc) (finding conspiracy to commit Hobbs Act robbery "does not categorically qualify as a crime of violence under the elements-based categorical approach" because "as the United States now concedes. . . . to convict a defendant of this offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force."); *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019) (same); *D'Antoni v. United States*, 916 F.3d 658, 665 (7th Cir. 2019) (finding conspiracy to kill a government witness did not qualify as a COV

under the sentencing guidelines' career offender elements clause); *United States v. Bowman*, 873

F.3d 1035, 1042 (8th Cir. 2017) (finding that murder for hire, because it has an imbedded

conspiracy element, cannot "constitute a crime of violence . . . under the force clause of

924(c)(3)(A)"); Gov't Br., *United States v. Davis*, No. 18-431, 2019 WL 629976, at *50 (U.S.

Feb. 12, 2019) ("Conspiracy to commit the sort of violent robbery spree at issue here . . . . need

not, however, lead to the commission of the planned robbery, and thus such a conspiracy does

not 'have as an element the use, attempted use, or threatened use of physical force against the

person or property of another,' so as to qualify as a 'crime of violence' under 18 U.S.C.

924(c)(3)(A)."); *Davis*, 139 S. Ct. at 2353 (Kavanagh, J., dissenting) (noting that "conspiracies to

commit robbery" might not "fall within § 924(c)(3)'s elements clause").

### 2. § 1363 is not a crime of violence because it can committed by non-violently damaging property.

Section 1363 is not a crime of violence for a second independent reason: a person can

cause property damage without using violent, physical force.  That is, to qualify as a "crime of

violence," the offense must have "as an element the use, attempted use, or threatened use of

*physical force* against the person or property of another." 18 U.S.C. § 924(c)(3)(A) (emphasis

added).  The phrase "physical force" has been interpreted by the Supreme Court to mean

"*violent* force—that is, force capable of causing pain or injury to another person." *Johnson v.

United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

One can cause property damage, and therefore be guilty of § 1363, without the use of

violent force.  For instance, one can injure property by pouring tar on steps; by cutting a tree; by

swinging a door too hard; or by simply spray-painting graffiti. *See, e.g.*, *Cobble v. United States*,

2009 WL 2610532 (U.S. Ct. Fed. Cl. Aug. 24, 2009) (§ 1363 conviction based on pouring tar on

courthouse steps); *United States v. Kelly*, 676 F.3d 912, 914 (9th Cir. 2012) (§ 1363 conviction for cutting fence); *United States v. Nerius*, 824 F.3d 29, 30 (3d Cir. 2016) (§ 1363 conviction for breaking sprinkler head); *see also cf. United States v. Landeros-Gonzales*, 262 F.3d 424, 427 (5th Cir. 2001) (upholding Texas criminal mischief conviction—which required intentional damage to property—where defendant "had spray-painted graffiti on a building and a fence"); *United States v. Randall*, 435 F. App'x 707, 708 (9th Cir. 2011) (upholding 18 U.S.C. § 1361 conviction—which required intentional damage to United States property—for cutting two maple trees from the Olympic National Forest); *United States v. Barringer*, 248 F. App'x 754, 755 (7th Cir. 2007) (§ 1361 conviction for scratching "USM" on a government vehicle); *United States v. Sanchez-Maldonado*, 737 F.3d 826, 827 (1st Cir. 2013) (§ 1361 conviction for "causing damage to an air conditioning system"); *United States v. Martin*, 251 F. App'x 979, 980 (6th Cir. 2007) (§ 1361 conviction for "'swinging wooden doors separating the spectators from participants' in a federal courtroom and causing damage").[6]

All of these examples satisfy § 1363's elements, yet none of them involve the "*violent force*" that is required by *Johnson*. 559 U.S. at 140 (emphasis in original); *cf. Landeros-Gonzalez*, 262 at 427 (holding that graffiti, though it "causes damage to property," is not sufficiently violent to count as physical force for the purposes of defining "crime of violence" under 18 U.S.C. § 16—which is identically worded to § 924(c)(3)).

The Supreme Court has repeatedly instructed that "[i]n construing [§ 924(c)(3)], we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'

---

[6] Other examples of ways in which to damage property abound: dropping another's phone, spilling wine on another's carpet, leaving the refrigerator open and spoiling the food inside, or walking on growing grass.

The ordinary meaning of this term . . . suggests a category of violent, active crimes[.]" *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).  No one could credibly suggest that spray painting graffiti or pouring tar on steps is ordinarily understood as "violent."  *See United States v. Bowen*, 936 F.3d 1091, 1104 (10th Cir. 2019) ("And we easily conclude that the act of spray-painting another's car does not entail the use of violent force.").

The Tenth Circuit recently reached this conclusion when analyzing the applicability of § 924(c) to a different offense that involves injury to property.  *See Bowen*, 936 F.3d at 1103-08.  Specifically, the court found that witness retaliation through bodily injury constitutes a crime of violence, but witness retaliation through property damage does not.  *See id.* at 1108.  The court reasoned that "nothing about [spray-painting, throwing paint, or pouring chocolate syrup on property] is inherently violent, so the mere fact that they damage property cannot make them crimes of violence under § 924(c)(3)."  *Id.* at 1107-08.  The same conclusion follows here.

### 3. The third element does not change the result—§1363 is not a crime of violence.

The third element—requiring that "the destroyed or injured building was a dwelling or the act resulted in the life of any person being placed in jeopardy"—does not change the result.  As a preliminary matter, injuring a dwelling or placing lives in jeopardy are merely two alternate means of committing the enhanced offense; they are not separate elements.  *See* Superseding Indictment, ECF No. 17 (alleging Mr. Ortega-Hernandez injured a dwelling and placed lives in jeopardy); *see also Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016) (explaining that an "element" is something that the jury has to unanimously select or something the defendant must necessarily admit to be found guilty of the offense; but "means" are the factual manner of satisfying an element that the jury does not have to unanimously find or the defendant does not

have to necessarily admit).  Because injuring a dwelling is "the least of the acts criminalized" of

these two means, the question still remains whether injuring a dwelling is a crime of violence (i.e.,

the allegation involving placing lives in jeopardy is irrelevant).  *See Montcrieffe*, 569 U.S. at 191.

As discussed above, injuring a dwelling is not a crime of violence because it does not require

violent physical force.  *See supra* IV(A)(2).  This alone disqualifies the third element from

transforming § 1363 into a crime of violence.

Moreover, the third element has an insufficient *mens rea* to qualify as a crime of violence.

That is, in the first element, a defendant must act "willfully and maliciously" with respect to

destroying property, but in the third element, the defendant does need to be anything more than

negligent as to whether the injured building was a dwelling or the act resulted in the life of any

person being placed in jeopardy.  For example, someone could spray-paint graffiti on a building,

not realizing it is a "dwelling."  Or someone could commit arson, not realizing someone is inside.

In both scenarios, the defendant would satisfy the third element with at most an accidental or

negligent *mens rea*.  To constitute a "crime of violence," however, the *mens rea* must be more

than accidental or negligent conduct.  *See Leocal*, 543 U.S. at 9 (holding that "the 'use ... of

physical force against the person [] of another' [] most naturally suggests a higher degree of

intent than negligent ... conduct").  As such, the third element does nothing to change the

result—§1363 is not a crime of violence.

### 4. *Khatallah* **found § 1363 is a crime of violence, but much of its rationale has since been rejected by the majority of courts of appeals, the U.S. Solicitor General, and even the U.S. Attorney's Office in this district.**

While Judge Cooper found that § 1363 was a crime of violence in *Khatallah*, his opinion

on this matter has aged poorly.  *See United States v. Khatallah*, 316 F. Supp. 3d 207, 220 (D.D.C.

2018).[7]  First, *Khatallah* rejected the above conspiracy argument because it found that if "the 'object' of the conspiracy—i.e., it unlawful agreed-upon goal—fits within §924(c)'s definition of crime of violence, then the conspiracy crime also qualifies as a crime of violence." *Id.* at 213 n.5. And because the court found that the object of the conspiracy—injuring a dwelling—to be a crime of violence, it found that the conspiracy element also qualified as a crime of violence. *See id.*[8]

Since *Khatallah*, however, the vast majority of courts of appeals have reached a contrary result: conspiracy offenses, including those where the object of the conspiracy is violent, are *not* crimes of violence. *See supra* IV(A)(1) (citing recent decisions from the Second, Fourth, Fifth, Seventh, and Eighth Circuits).  This is so because a person can *agree* to use force, and therefore enter into a conspiracy, without necessarily using force. *See id.*  The U.S. Solicitor General conceded this issue in its briefing before the U.S. Supreme Court. *See* Gov't Br., *United States v. Davis*, No. 18-431, 2019 WL 629976, at *50 (U.S. Feb. 12, 2019) ("Conspiracy to commit the sort of violent robbery spree at issue here . . . . need not, however, lead to the commission of the planned robbery, and thus such a conspiracy does not 'have as an element the use, attempted use, or threatened use of physical force against the person or property of another,' so as to qualify as a 'crime of violence' under 18 U.S.C. 924(c)(3)(A).").  And even the U.S. Attorney's Office in

---

[7] The case has been appealed to the D.C. Circuit. *See United States v. Khatallah,* No. 18-3041.

[8] The court relied upon *United States v. Kennedy*, 133 F.3d 53, 57-58 (D.C. Cir. 1998) and Judge Millett's interpretation of *Kennedy* in her concurrence in *United States v. Eshetu*, 863 F.3d 946, 961 (D.C. Cir. 2017), *vacated in part in rehearing by* 898 F.3d 36 (D.C. Cir. 2018), for the proposition that "in a Hobbs Act conspiracy, we may look to the object of the conspiracy—either robbery or extortion—to determine if the conspiracy itself is a crime of violence." *Khatallah*, 316 F. Supp. 3d at 213 n.5. *Kennedy*, however, does not support that proposition, as it only involved substantive Hobbs Act robbery and had nothing to do with Hobbs Act conspiracy.

this District has conceded in sealed cases that conspiracy to commit arguably violent crimes (*e.g.*, armed bank robbery) are *not* crimes of violence.[9]  *Khatallah's* rejection of the conspiracy argument thus finds itself going against the vast majority of courts of appeals, the U.S. Solicitor General, and several recent concessions by this very U.S. Attorney's Office.

Moreover, *Khatallah* has been undermined by the Tenth Circuit's *Bowen* decision, which explicitly rejected its finding that minor property damage can qualify offenses as "crimes of violence." *See United States v. Bowen*, 936 F.3d 1091, 1105 (10th Cir. 2019).  Indeed, the Tenth Circuit labeled *Khatallah's* reasoning "unpersuasive." *Id*.  *Khatallah* found the substantive crime of injuring a dwelling under § 1363 to be a crime of violence based on the following reasoning: First, Judge Cooper noted that the Supreme Court, in *Johnson*, interpreted the term "physical force" in the elements clause of the Armed Career Criminal Act ("ACCA"), § 924(e)(2)(B)(i), to mean "force capable of causing physical pain or injury to another person." *See Khatallah*, 316 F. Supp. 3d at 214-15 (quoting *Johnson*, 559 U.S. at 140).  He then observed that the sole textual difference between the elements clause in the ACCA (relevant to *Johnson*) and the elements clause in § 924(c) (relevant to *Khatallah*), was that the ACCA only includes force used against *a person*, whereas § 924(c) includes force used against *a person and property*.[10] *See id*. at 215 n.6.  Given the textual similarities, Judge Cooper simply applied *Johnson's* definition of "physical force" from the ACCA context to § 924(c)'s definition of "physical

---

[9] Counsel is willing to file the sealed concessions under seal upon request by the Court.

[10] *Compare* § 924(e)(2)(B)(i) (defining "violent felony" as a felony offense that "has an element the use, attempted use, or threatened use of physical force against the person of another"), *with* § 924(c)(3)(A) (defining a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person *or property of another*") (emphasis added).

force" in the property context—*i.e.*, *Johnson* defined "physical force" against a person to mean "force capable of causing physical pain or injury to another person," so the court determined that "physical force" in § 924(c)'s property context meant "force capable of causing injury to property." *See id.* With this definition in mind, the court found that breaking sprinkler heads or pouring tar on steps necessarily involved force because they were "capable of causing injury to property." *See id.* at 214-15. Thus, the court found that § 1363 was a crime of violence. *Id.*

But there are at least two problems with the court's reasoning. First, the court largely ignored the first part of *Johnson's* definition: that the term "physical force" means "***violent force***—force capable of causing physical pain or injury to another person." *Compare Johnson*, 559 U.S. at 140 (emphasis on ignored part), *with Khatallah*, 316 F.3d at 215 ("*Johnson's* definition of physical force simply requires that all of the prohibited acts involve 'force capable of causing physical injury.'"). This was a material omission because the "*violent* force" part is perhaps the most important part of *Johnson's* definition. The *Johnson* Court went through great lengths explaining the significance of those terms. The Court used dictionary definitions for both "violent" ("extreme," "furious," "severe," "vehement," and "strong,") and "force" ("strength," "energy," "active power," and "vigor") to conclude that the term "physical force" within the ACCA context clearly requires "*violent* force." *Id.* at 139-40. The Court also noted that "[w]hen the adjective 'violent' is attached . . . its connotation of strong physical force is even clearer." *Id.* And, to reinforce its interpretation, the Court quoted approvingly that violent felonies are crimes "characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon'" *Id.* at 141. Thus, the word "violent" itself "connotes a substantial degree of force" that is irreconcilable with finding that pouring tar

on steps is "violent." *See id.* Because *Khatallah* largely ignored the "*violent* force" part of the definition, its reasoning was flawed on this issue.

The second problem with the court's reasoning was its failure to recognize that mechanically applying ACCA's definitions relating to injury to person to § 924(c)'s definitions relating to injury to property ultimately produces nonsense. For example, in the ACCA context involving injury to a person, the Supreme Court has found that the physical force element can be satisfied when the force is enough to "overcome a victim's resistance." *See Stokeling v. United States*, 139 S. Ct. 544, 548 (2019). But if that definition is applied to the property context, it makes no sense—what amount of force would be required to overcome property's resistance?[11] Similarly, the Supreme Court has held that "offensive touching" is insufficient to satisfy the physical force element. *See Johnson*, 559 U.S. at 139. But if that definition is applied to the property context, it makes no sense—how does one gauge "offensive touching" when referring to property?

The bedrock principle that animates the crime of violence jurisprudence is that context matters. *See Johnson*, 559 U.S. at 139 ("Ultimately, context determines meaning."). The Supreme Court has made clear that it "do[es] not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense." *Id.* 139-40. It has also made clear that "[i]n construing [§ 924(c)(3)], we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.' The ordinary meaning of this term . . . suggests a category of

---

[11] Given that property is not a volitional being, is it even possible to overcome its resistance? Would stepping on grass be sufficient, as it overcomes the grass blade's resistance? Would closing a creaky door be sufficient? The difficulties in answering these questions only illustrates the problems with *Khatallah's* approach.

violent, active crimes[.]" *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).  Finding that spray

painting a building or pouring tar on steps is a crime of violence is just one of the absurd results

that follows from *Khatallah's* reasoning.  And it occurred because the court forced "term-of-art

definitions into contexts where they plainly do not fit"—i.e., *Khatallah* did exactly what the

Supreme Court has counseled against.  *See Johnson*, 559 U.S. at 139-40.

The Tenth Circuit's *Bowen* decision is more persuasive because it avoids both pitfalls of

*Khatallah*.  In *Bowen*, the government argued that threatening to damage property satisfies

*Johnson* and *Stokeling*, on the theory that those cases require no more than force capable of

damaging property in some way, however slight—similar to what *Khatallah* held.  *See Bowen*, 936

F.3d at 1103.  The court rejected that proposition.  *Id.* at 1103-04.  In doing so, the court

explained why the situation is different with statutes that address force against property in

addition to force against people: property can be damaged by applying slight force that is not

inherently violent, such as the "force" of spray paint touching a car.  *Id.* at 1104-08.  *Johnson's*

definition, according to the court, could not simply be recast as "capable of causing injury to

property."  *Id.*  Instead, in the property context, "physical force" means force that is inherently

violent, strong, and substantial.  And because spray painting or pouring tar on court steps is not

inherently violent, strong, or substantial, it fails to qualify as a crime of violence.  *Khatallah* was

wrong for finding otherwise.

**B.  Mr. Ortega-Ramirez meets the procedural requirements of 28 U.S.C. § 2255(a) and (f)(3).**

**1.  Mr. Ortega-Ramirez's claim is cognizable under § 2255(a).**

Under 28 U.S.C. § 2255(a), a petitioner is entitled to relief when his original conviction

"was imposed in violation of [1] the Constitution or [2] laws of the United States" or where "[3]

the court was without jurisdiction to impose such sentence." 28 U.S.C. § 2255(a).  Mr. Ortega-Ramirez is entitled to relief on all three grounds.

First, for the reasons discussed above, Mr. Ortega-Ramirez's § 924(c) conviction and mandatory consecutive sentences violate due process because they depended upon an unconstitutionally vague residual clause.  *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) ("[I]mposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process.").

Second, because Mr. Ortega-Ramirez's § 1363 conviction categorically fails to satisfy the "crime of violence" element under § 924(c) after *Johnson* and *Davis*, Mr. Ortega-Ramirez has been convicted of an offense that is no longer a crime.  This means that Mr. Ortega-Ramirez's § 924(c) conviction violates the United States laws and results in a miscarriage of justice.  The Supreme Court has held this is exactly the type of error that is cognizable under § 2255(a).  *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

Third, Mr. Ortega-Ramirez's conviction have been entered in excess of this Court's jurisdiction.  As discussed above, § 1363 categorically fails to satisfy the "crime of violence" element under § 924(c).  Because of this, the indictment not only failed to state a § 924(c) offense, it also affirmatively alleged conduct that falls outside the sweep of § 924(c).  *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (finding that a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because

that conduct falls outside the sweep of the charging statute"); *United States v. Barboa*, 777 F.2d 1420, 1423 n.3 (10th Cir. 1985) ("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the States to bring the defendant into court to answer the charge brought against him.'") (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

### 2. Mr. Ortega-Ramirez's claim is timely under § 2255(f)(3).

This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

Mr. Ortega-Ramirez filed his claim within a year of the Supreme Court's decision in *Johnson*, which the Supreme Court has already held "announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. at 1268. Mr. Ortega-Ramirez's motion is thus timely based on *Johnson*.

Additionally, Mr. Ortega-Ramirez filed this supplemental motion within a year of the Supreme Court's decision in *Davis*, which the Solicitor General has already conceded creates another new substantive rule that has retroactive effect in cases on collateral review. *See* Brief for the United States, *United States v. Davis*, S. Ct. No. 18-431, at 52 (Feb. 12, 2019) ("A holding of this Court that Section 924(c)(3)(B) requires an ordinary-case categorical approach—and thus is unconstitutionally vague—would be retroactive substantive rule applicable on collateral review.") (citing *Welch*, 136 S. Ct. at 1264).[12]

---

[12] Available at https://www.supremecourt.gov/DocketPDF/18/18-

The Solicitor General correctly conceded *Davis* created a new substantive rule.  A decision is "substantive" if it "alters the range of conduct or the class of persons that the law punishes."  *Welch,* 136 S. Ct. at 1265.  This includes "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."  *Id.* (citation omitted).  For example, in *Welch*, the Supreme Court found that *Johnson v. United States*, 135 S. Ct. 2551 (2015), was retroactive because it altered the punishment for a class of people once subject to the ACCA (18 U.S.C. § 924(e)(2)(B)) who could no longer be classified as such based on the statute's now-defunct residual clause.  *Id.*  This reasoning applies with even more force here.  *Davis* not only alters sentences but renders innocent a class of people once guilty under § 924(c) based on predicate offenses that solely fell within the now-defunct § 924(c) residual clause.  Therefore, *Davis* is retroactive and Mr. Ortega-Ramirez's motion is timely based on *Davis* as well.

## V.  Conclusion

For the above reasons, Mr. Ortega-Hernandez respectfully asks this Court to vacate his § 924(c) conviction and order resentencing.  A proposed Order is attached.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004

---

431/88090/20190212154352314_18-431tsUnitedStates.pdf.