**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 12-cr-00014 (APM) |
| | ) | |
| OSCAR RAMIRO ORTEGA-HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

On the evening of November 11, 2011, Defendant Oscar Ramiro Ortega-Hernandez fired at least eight shots from a high-powered rifle that struck the residential section of the White House. Three U.S. Secret Service officers were nearby when bullets hit the building.  After a dayslong, multi-state search, Defendant was arrested in Pennsylvania.  He later pleaded guilty to two counts: (1) "Injury to a Dwelling and Placing Lives in Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States," in violation of 18 U.S.C. § 1363, and (2) "Using, Carrying, and Discharging a Firearm During a Crime of Violence," in violation of 18 U.S.C. § 924(c). He received a total 25-year prison sentence.

Defendant now moves to vacate his § 924(c) conviction on the ground that his § 1363 conviction no longer qualifies as a predicate "crime of violence" following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  The court disagrees and thus denies his motion.

## II.    BACKGROUND

### A.    Factual Background

In 2011, Defendant experienced a mental health crisis.  *See* Def.'s Suppl. Mot. to Vacate J. Under 28 U.S.C. § 2255, ECF No. 112 [hereinafter Def.'s Mot.], at 2.  Believing he was "the modern-day Jesus Christ," Defendant sought to appear on Oprah Winfrey's show to spread his message.  *Id.* (internal quotation marks omitted).  When that failed, he turned his attention to President Obama.  United States' Opp'n to Def.'s Mot., ECF No. 122 [hereinafter Gov't Opp'n], at 3.  Defendant believed that President Obama "was a devil and the anti-Christ," and he developed plans to "take [him] out."  *Id.*  Defendant purchased an AK-47-style assault rifle and over 1,200 rounds of ammunition.  *Id.* at 4.  He engaged in "shooting practice" over the course of six months. *Id.*

In late October 2011, Defendant left his home in Idaho Falls, Idaho, after making videos "prais[ing] Osama bin Laden[]" and "call[ing] for a revolution," and drove over 2,000 miles to Washington, D.C.  *Id.*  On the evening of November 11, 2011, Defendant stopped his car near the entrance of the Ellipse, lowered his car window, and shot at the White House.  *Id.* at 5.  President Obama and the First Lady were not home at the time, but two other members of the First Family were present.  *Id.*  Neither was injured.  *Id.*  One bullet fired by Defendant struck within 22 feet of two Secret Service officers stationed on the roof of the White House, and several other bullets struck the Truman Balcony, below which was another Secret Service officer.  *Id.* at 5–6. None were hurt.  *Id.* at 5.  The fired shots caused over $97,000 in property damage.  *Id.* at 5. Defendant was charged in a 19-count indictment, including one count of attempted assassination of the President.  *Id.* at 7.

Defendant eventually entered into a plea agreement.  *See* Plea Agreement, ECF No. 53. Under its terms, Defendant agreed to plead guilty to two counts: (1) "Injury to a Dwelling and Placing Lives in Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States," in violation of 18 U.S.C. § 1363 (Count Five), and (2) "Using, Carrying, and Discharging a Firearm During a Crime of Violence"—that is, the § 1363 offense—in violation of 18 U.S.C. § 924(c)(1)(A) (Count Eleven).  *Id.* at 1; Superseding Indictment, ECF No. 17, at 2–3.  The government ultimately dropped the remaining charges.  Plea Agreement at 2.

Then-presiding Judge Rosemary Collyer sentenced Defendant to 25 years of incarceration: 15 years on the § 1363 count and an additional, mandatory-minimum 10 years on the § 924(c) count, to run consecutively as required by law.  18 U.S.C. § 924(c)(1)(A)(iii); Judgment, ECF No. 78, at 3.

## B.    Procedural Background

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015).  The Court held there that the "residual clause" in the Armed Career Criminal Act, which provided an enhanced penalty for an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague.  *Johnson*, 576 U.S. at 596 (internal quotation marks omitted). The following year, the Court announced that *Johnson* would have retroactive application. *See Welch v. United States*, 578 U.S. 120 (2016).

Following the decisions in *Johnson* and *Welch*, and consistent with this District's post-*Welch* standing order,[1] Defendant filed a timely "abridged" motion to vacate his § 924(c) conviction.  Def.'s Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence,

---

[1] *See* Standing Order, entered June 2, 2016 (available at https://www.dcd.uscourts.gov/sites/dcd/files/1853_001.pdf).

ECF No. 108.  Section 924(c)'s definition of "crime of violence" relies in part on a residual clause similar to the one deemed unconstitutionally vague in *Johnson*.  *See* 18 U.S.C. § 924(c)(3)(B) (defining a "crime of violence" to mean a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").  Defendant later supplemented his original filing.  *See* Def.'s Mot.

By then, the Supreme Court had decided *United States v. Davis*, 139 S. Ct. at 2319.  In that case, the Court held, consistent with its reasoning in *Johnson*, that § 924(c)'s residual clause was unconstitutionally vague.  *Id.* at 2324.  *Davis* prompted the question whether Defendant's § 924(c) conviction could be sustained on the statute's alternate definition of "crime of violence," known as the "elements clause."  *Id*.  That clause provides that a felony offense is a "crime of violence" for purposes of § 924(c) if the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).

Defendant now asserts that his conviction under § 1363 does not constitute a "crime of violence" under the "elements clause" and therefore his § 924(c) conviction must be vacated. Def.'s Mot. at 8–13.  The government opposes the requested relief.  *See* Gov't Opp'n.

## III.   PROCEDURAL BARS

The United States raises two threshold procedural bars to review: waiver and default. The government argues that Defendant waived his right to file the instant collateral attack motion as part of his plea agreement.  *Id.* at 19–23.  Alternatively, it contends that Defendant defaulted his § 924(c) claim because he failed to raise it on direct review, and he has not established both cause and prejudice to excuse the default.  *Id.* at 23–28.  The court is not persuaded by either argument.

### A.      Defendant Has Not Waived the Present Post-Conviction Claim

Defendant's plea agreement contained a section titled, "Waiver of Collateral Attack." Plea Agreement at 7.  Defendant generally agreed to "waive[] any right to challenge *his sentence* or otherwise attempt to modify or change *his sentence* or the manner in which it was determined in any collateral attack" under § 2255.  *Id.* (emphasis added).  The government contends that this waiver forecloses Defendant's claim under *Davis*.  Gov't Opp'n at 19–23.

It does not.  Appellate courts have consistently held "that a defendant is not barred from challenging his conviction if he waives only his right to challenge his sentence."  *United States v. Loumoli*, 13 F.4th 1006, 1009 (10th Cir. 2021) (citing *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006) ("A defendant's waiver of his right to appeal a sentence is just that: it does not also constitute a waiver of his right to challenge a conviction."); *United States v. Spear*, 753 F.3d 964, 970 (9th Cir. 2014) ("[A] defendant's knowing and voluntary waiver of his right to appeal his sentence does not inherently encompass a knowing and voluntary waiver of his right to appeal his conviction.")).  Indeed, in *Loumoli*, the court held that the defendant had not waived his right to challenge his § 924(c) conviction under *Davis*, when his plea agreement contained a waiver of only his "right to challenge his sentence."  *Id*. at 1007, 1009–10.

The same is true here.  Defendant's waiver of a collateral attack motion extended only to "his sentence."  Plea Agreement at 7.  He now challenges his *conviction* under § 924(c). The collateral attack waiver therefore does not foreclose his post-conviction claim.[2]

---

[2] Defendant notes that elsewhere his plea agreement states that "[he] reserves the right to make a collateral attack upon [his] *sentence*, pursuant to § 2255, if new and currently unavailable information becomes known to him."  Plea Agreement at 7 (emphasis added).  That provision arguably permits Defendant to challenge his *sentence* on the § 924(c) count, as the Supreme Court's decision in *Davis* seemingly would constitute "new" information that was not available to Defendant at the time of sentencing.

### B.        Plaintiff Has Established Cause and Prejudice

Next, the government argues that Defendant is "procedurally barred from raising [his] claim in a § 2255 motion because he failed to assert any void-for-vagueness challenge on direct appeal," and he has not shown cause and prejudice for his default.  Gov't Opp'n at 1–2.  Defendant concedes that he did not challenge his § 924(c) conviction on appeal on vagueness or sufficiency grounds.  *See* Def.'s Reply in Supp. of Def.'s Mot., ECF No. 130, at 22–25.  Therefore, the only question is whether he has established cause and prejudice.

Cause for default exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel" on direct appeal.  *Reed v. Ross*, 468 U.S. 1, 16 (1984).  Every court in this District to have considered the question has "recognized the novelty of claims" based on the *Johnson* line of cases, culminating in *Davis*.  *See United States v. (Bernard) Johnson*, 98-cr-71 (BAH), 2023 WL 4234651, at *9 (D.D.C. June 28, 2023) (citing cases); *see also United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016) (observing that "no one—the government, the judge, or the appellant—could reasonably have anticipated *Johnson*").  This court now joins this unanimous chorus of decisions.

To show prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1140 (D.C. Cir. 2003) (citations omitted).  In this case, the prejudice and merits inquiries merge: if Defendant is right that *Davis* means his § 924(c) conviction cannot be sustained, then he plainly establishes prejudice, as his 10-year consecutive sentence would have to be vacated.  *See Lassend v. United States*, 898 F.3d 115, 123 (1st Cir. 2018) (stating, with respect to *Johnson* challenge, "that the prejudice inquiry dovetails with the merits inquiry, and is not satisfied by mere argument"); *but see United States v. Snyder*, 871 F.3d

1122, 1128 (10th Cir. 2017) (finding prejudice presuming merits of *Johnson* challenge).[3]  On the other hand, if he fails on the merits, there can be no actual prejudice.  Accordingly, the court turns to the merits.

## IV.    DISCUSSION

The "elements clause" of § 924(c) defines a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(1)(A).  The sole question before the court is whether Defendant's conviction under § 1363 qualifies as a "crime of violence" under the "elements clause."[4]

Before addressing that question, the court notes the government's concession that the D.C. Circuit's decision in *United States v. Khatallah*, *see supra* note 4, does not provide the answer.  In *Khatallah*, the court affirmed the defendant's conviction under § 924(c) when the underlying offense, as here, was a violation of § 1363.  41 F.4th at 630–35.  In so ruling, the court "agree[d]" with the government's contention that the "substantive offense of injuring property . . . is a crime of violence."  *Id.* at 632.  That sounds like a binding holding.  But the government in this proceeding concedes that "the defendant in *Khatallah* did not challenge the District Court's conclusion that a substantive violation of § 1363 satisfies the elements clause of 18 U.S.C. § 924(c)(3)(A)."  United States' Resp. to Def.'s Notice of Add'l Authorities,

---

[3] Defendant contends that the "[p]rejudice analysis assumes the existence of error."  Def.'s Mot. at 25 (citing *United States v. Hammond*, 354 F. Supp. 3d 28, 42 (D.D.C. 2018)).  The court is not sure that is an accurate statement of law.  In *Hammond*, the court relied on the D.C. Circuit's decision in *Pettigrew*, but the court in *Pettigrew* assumed error strictly for purposes of that case.  *See* 346 F.3d at 1145.  It does not appear to have articulated a rule that the prejudice prong always "assumes the existence of error."  In any event, because the prejudice and merits merge here, the court need not take a firm position.

[4] Defendant also initially asserted that his § 924(c) conviction could not stand because a person can violate § 1363 by conspiring to destroy or injure property.  Def.'s Mot. at 10–12.  He argued that, because the least culpable conduct under § 1363—a conspiracy—is a not a crime of violence, under the categorial approach, *see infra*, his § 924(c) conviction had to be vacated.  *Id.*  The D.C. Circuit, however, has since rejected that argument, holding that "Section 1363 is divisible," meaning that it defines multiple crimes, only some of which might be crimes of violence.  *United States v. Khatallah*, 41 F.4th 608, 632 (D.C. Cir. 2022).  Therefore, the question here remains whether Defendant's conviction for a *substantive* violation of § 1363 is a crime of violence.

ECF No. 133, at 2.   So, the government says, "*Khatallah* does not resolve that aspect of defendant's instant § 2255 claim." *Id.*   And Defendant agrees.   *See* Def.'s Reply Concerning Notice of Add'l Authorities, ECF No. 134, at 1.   The court accepts the government's concession and proceeds to answer the question posed.

### A.     Legal Framework

The court must apply a framework known as the "categorical approach" to determine whether Defendant's conviction under § 1363 constitutes a "crime of violence" under § 924(c)(3)(A).   *See Khatallah*, 41 F.4th at 631.   Under that approach, the court "'focus[es] solely on whether the elements of the crime of conviction' require the use, attempted use, or threatened use of physical force against the person or property of another, while ignoring the particular facts of the case.'"   *Id.* (citation omitted).   An "offense does not qualify . . . unless the *least* serious conduct it covers falls within the elements clause."   *Borden v. United States*, 141 S. Ct. 1817, 1832 (2021).

In *Khatallah*, the D.C. Circuit held that § 1363 is a "divisible" statute, meaning it "list[s] elements in the alternative, and thereby defines[s] multiple crimes."   41 F.4th at 631–33 (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)) (internal quotation marks omitted).   When a statute is "divisible," the court must apply a "modified categorical approach."   *Id*. at 631 (quoting *Mathis*, 579 U.S. at 505).   That approach requires the court to look "to a limited class of documents," for example, the indictment, jury instructions, or plea agreement and colloquy, "to determine what crime, with what elements, a defendant was convicted of."   *Id.* (quoting *Mathis*, 579 U.S. at 505–06) (internal quotation marks omitted).   "If the relevant documents establish with 'legal certainty' that the conviction was for a crime of violence, the conviction may be used as a predicate offense."   *Khatallah*, 41 F.4th at 631 (quoting *Mathis*, 579 U.S. at 515 n.6).   On the other

hand, "[if] the relevant documents are 'ambiguous,' the conviction 'may not be used.'" *Id.* (quoting *United States v. Mathis*, 963 F.2d 399, 410 (D.C. Cir. 1992)).

### B. Applying the Modified Categorical Approach

Defendant accepted a plea bargain. Therefore, under the modified categorical approach, the court can review "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [ ] some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). Those records establish that Defendant's § 1363 conviction was for "Injury to a Dwelling and Placing Lives in Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States." That is what the Superseding Indictment charged. Superseding Indictment at 2. That is what the plea agreement provided. Plea Agreement at 1. And, as the court will discuss momentarily, the factual proffer to which Defendant admitted supported that offense. Stmt. of Facts in Supp. of Guilty Plea, ECF No. 54, [hereinafter Stmt. of Facts].

Having defined the precise offense of conviction, it is easy to conclude that Defendant was convicted of a "crime of violence." Why? Because an element of Defendant's crime was that his destruction or injury of property put "the life of any person . . . in jeopardy." 18 U.S.C. § 1363. That specific offense conduct increased the maximum sentence from 5 years to 20 years. *Id.* It therefore was an "element" of the offense. *See Mathis*, 579 U.S. at 518 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").

Putting "the life of any person in jeopardy" necessarily requires the "use of physical force against the person . . . of another" for purposes of § 924(c)(3)(A). The court assumes that the definition of "physical force" adopted by the Supreme Court in *(Curtis) Johnson v. United States*,

559 U.S. 133 (2010), applies to § 924(c)(3)(A).  "Physical force," per *(Curtis) Johnson*, means "force capable of causing physical pain or injury."  559 U.S. at 140.  The element of placing "the life of any person in jeopardy" requires that a defendant use "force capable of causing physical pain or injury."  *Id*.; *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (holding that "the force necessary to overcome a victim's physical resistance"—as required to commit robbery—"is inherently 'violent' in the sense contemplated by [*(Curtis)*] *Johnson*").  Put differently, a person cannot endanger the life of another through the destruction of property without "a substantial degree of force."  *Borden*, 141 S. Ct. at 1830.

Defendant pleaded to a crime requiring such force.  The Statement of Facts accompanying the plea agreement confirms as much.  One of the eight shots that Defendant fired "struck the roof of the White House within approximately 20 feet of where Officers Amann and Louriana were stationed."  Stmt. of Facts ¶ 20.  In addition, "[s]everal of the bullets" fired by Defendant "struck the Truman balcony directly above where Officer [Carrie] Johnson was stationed.  Officer Johnson heard six to eight shots and the sound of what she believed to be debris falling from above.  Officer Johnson took cover behind the stairwell, drew her firearm, and readied a shotgun."  *Id.*  And, "[t]wo members of the First Family were present within the residence of the White House [ ], but were unharmed."  *Id.* ¶ 19.  The court recites these admissions not to focus on the particular facts of the case, but to demonstrate to a "legal certainty" that Defendant's conviction involved the use of physical force against a person and therefore was a crime of violence.  *Khatallah*, 41 F.4th at 631.

The parties' briefing largely misses the mark.  Both sides devote much of their attention to debating whether the least culpable conduct under § 1363 requires the "use of physical force against . . . *property*."  18 U.S.C. § 924(c)(3)(A) (emphasis added).  Defendant, for instance, insists that the statute does not require "a substantial degree" of force because courts have sustained

convictions under § 1363 for damaging property through non-violent means, such as by pouring tar on steps, cutting a fence, breaking a sprinkler head, and spray-painting graffiti. *See* Def.'s Mot. at 12–13 (citing *Cobble v. United States*, No. 09-37C, 2009 WL 2610532, at *1 (U.S. Ct. Fed. Cl. Aug. 24, 2009) (conviction for "pouring tar on the steps" of a federal courthouse); *United States v. Kelly*, 676 F.3d 912, 914 (9th Cir. 2012) (conviction for cutting fences on a naval base); *United States v. Nerius*, 824 F.3d 29, 30 (3d Cir. 2016) (conviction for breaking sprinkler head at correctional facility)); *Khatallah*, 41 F.4th at 625 (citing *United States v. Grady*, 18 F.4th 1275, 1281–83 (11th Cir. 2021), as "affirming a conviction under Section 1361 for peaceful protest that involved spray painting naval facilities"); *see also* Def.'s Notice of Add'l Authorities, ECF No. 131, at 3 (citing *United States v. Melaku*, 41 F.3d 386, 395 (4th Cir. 2022) (noting example of conviction under § 1361 for spray-painting rocks on government land)).

But "Section 1363 does not just define a property crime." *Khatallah*, 41 F.4th at 625. It also "creates an enhanced offense that can be committed by destroying property in a way that places life in jeopardy." *Id.* As the D.C. Circuit observed in *Khatallah*, "[w]hen placing a person in jeopardy is an element of the offense, that offense is committed against the person threatened." *Id.* That is what Defendant was convicted of here: placing a *person* in jeopardy, specifically Secret Service Agents and members of the First Family. So, the court need not tackle the theoretical question of whether a mere "property crime" under § 1363 constitutes a crime of violence.[5]

To be sure, § 1363 also imposes an enhanced 20-year maximum for destruction or injury to a "dwelling," and Defendant's underlying § 1363 conviction also encompassed that conduct.

---

[5] The two primary cases on which Defendant relies—*Melaku* and *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019)—are readily distinguishable when Defendant's offense is properly framed. *Melaku* held that a violation of 18 U.S.C. § 1361, which is exclusively a property offense, is not a crime of violence. 41 F.3d at 395. And *Bowen* held that 18 U.S.C. § 1513(b)(2), a witness intimidation statute that can be violated by causing damage to a witness's tangible property, also is not a crime of violence. 936 F.3d at 1109. Neither case involved an offense, as here, for which a necessary element of the offense was the use of physical force against a person.

*See* Superseding Indictment at 2–3; Plea Agreement at 1; Stmt. of Facts ¶ 12 (stating that the second and third stories are "the residential section of the White House"), ¶ 18 (noting that the area on or about the second story of the White House "is widely known to be the residence of the First Family").  The court need not decide, however, whether destroying or injuring a dwelling is categorically a crime of violence—e.g., what if a defendant were convicted under § 1363 of only spray painting the White House?

The "dwelling" component of § 1363 is an alternative element of the enhanced penalty provision, not a different means of committing the offense.  *See Mathis*, 579 U.S. at 517–19; *cf. Khatallah*, 41 F.4th at 625 & n.6 (treating separately the "placing a person in jeopardy" and "dwelling" components of § 1363 as "element[s]" of the offense for purposes of determining whether the offense occurred within the special jurisdiction of the United States).  It is a fact that, if proven, increases the maximum penalty four-fold from five years to 20 years.  *See id.* at 518 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").[6]  Defendant's § 1363 conviction therefore comprised both a 20-year property crime (against a "dwelling") and a 20-year crime against a person (placing a person's life "in jeopardy").  *See Khatallah*, 41 F.4th at 625.  That latter offense requires the use of physical force against a person and Defendant was convicted of that offense.  Accordingly, the court is legally certain that Defendant's § 1363 offense for "Injury to a Dwelling *and* Placing Lives in

---

[6] If Defendant's case had been put to a jury, the jury would have had to agree upon the dwelling element unanimously to convict a defendant of the enhanced crime.  *See Mathis*, 579 U.S. at 506.  It could not have convicted Defendant of the 20-year offense if some number of them concluded that he destroyed a dwelling while others found that the conduct placed the life of a person in jeopardy.  *See id.*

Jeopardy within the Special Maritime and Territorial Jurisdiction of the United States" is a crime of violence for which he was properly convicted under § 924(c).

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 108, and Defendant's Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255, ECF No. 112, are denied.  A separate final order accompanies this Memorandum Opinion.



Dated:  July 10, 2023

Amit P. Mehta
United States District Court Judge